IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CALI FRESH, LLC, d/b/a CHRONIC    )
TACOS,                            )
                                  )
            Plaintiff,            )
                                  )
    v.                            )        1:20CV522
                                  )
TWIN CITY FIRE INSURANCE          )
COMPANY,                          )
                                  )
            Defendant.            )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Presently before this court are two motions to dismiss filed by Defendant Twin City Fire Insurance Company. (Docs. 25, 27.) Plaintiff Cali Fresh, LLC, d/b/a Chronic Tacos ("Plaintiff") has brought this action on behalf of itself and putative class members to enforce insurance policies that Plaintiff alleges cover lost business income related to the COVID-19 pandemic. (Doc. 19.)

Defendant first moves to dismiss Plaintiff's Complaint, (id.), for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), (Doc. 25). This motion is ripe for adjudication. Defendant also moves to dismiss Plaintiff's nationwide class action claims, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and Local Rule 7.2. (Doc. 27.) For the reasons stated herein,

this court will grant Defendant's Motion to Dismiss under Rule 12(b)(6), (Doc. 25), and deny as moot Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(1), 12(b)(2), and Local Rule 7.2, (Doc. 27).

## I.  BACKGROUND

### A.  Parties

Plaintiff is a limited liability corporation registered in North Carolina that, prior to the COVID-19 pandemic, operated fast-casual restaurants in Chapel Hill, Raleigh, and Wake Forest, North Carolina. (Amended Class Action Complaint ("Am. Compl.") (Doc. 19) ¶¶ 11-12.) Defendant is a Connecticut company with its principal place of business in Hartford, Connecticut, that sold and issued insurance policies to Plaintiff and putative class members. (Id. ¶¶ 13, 15.)

### B.  Factual Background

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint . . . ." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020). This court also considers the insurance policies and Executive Orders referenced in and attached to Plaintiff's Amended Complaint, as the parties do not dispute their authenticity. Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004); see also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308,

- 2 -

322 (2007) (holding that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions" including "documents incorporated into the complaint by reference"). The facts, taken in the light most favorable to Plaintiff, are as follows.

## 1. __Plaintiff's Insurance Policy__

Plaintiff maintained an insurance policy ("the Policy") with Defendant for the annual period beginning October 1, 2019, covering restaurants in Raleigh, Wake Forest, and Chapel Hill, North Carolina. (Am. Compl. (Doc. 19) ¶¶ 19, 21.) The Policy provides that Defendant "will pay for direct physical loss of or physical damage to Covered Property at the premises . . . caused by or resulting from a Covered Cause of Loss." (Hartford Ins. Policy ("Policy") (Doc. 19-1) at 35.)[1] The Policy defines "Covered Causes of Loss" as "RISKS OF DIRECT PHYSICAL LOSS," unless the Policy explicitly lists the loss as excluded or limits the coverage in another way. (Id. at 36.)

For "Covered Causes of Loss," the Policy provides that Defendant:

> will pay for the actual loss of Business Income
> [Plaintiff] sustain[s] due to the necessary suspension
> of [Plaintiff's] "operations" during the "period of

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

- 3 -

restoration". The suspension must be caused by direct
physical loss of or physical damage to property at the
"scheduled premises" . . . caused by or resulting from
a Covered Cause of Loss.

(Id. at 44.)

In a section entitled "Civil Authority," the Policy

provides that Defendant's "insurance is extended to apply to the

actual loss of Business Income" sustained during a 30-day period

"when access to [Plaintiff's] 'scheduled premises' is

specifically prohibited by order of a civil authority as the

direct result of a Covered Cause of Loss to property in the

immediate area of [Plaintiff's] 'scheduled premises'." (Id. at

45.)

In the Policy's "Fungi, Bacteria or Virus Exclusions"

clause (the "Virus Exclusion"), the Policy excludes all losses

caused by a virus. The Virus Exclusion provides:

    i.  "Fungi", Wet Rot, Dry Rot, Bacteria And
        Virus

        We will not pay for loss or damage caused
        directly or indirectly by any of the following.
        Such loss or damage is excluded regardless of any
        other cause or event that contributes
        concurrently or in any sequence to the loss:

        (1) Presence, growth, proliferation, spread or
            any activity of "fungi", wet rot, dry rot,
            bacteria or virus.

(Id. at 137.)

- 4 -

### 2. **Plaintiff's Alleged Business Income Losses**

On March 10, 2020, the Governor of North Carolina issued an Executive Order declaring a state of emergency due to COVID-19. (Am. Compl. (Doc. 19) ¶ 40.) On March 17, 2020, the Governor issued a second order that limited the sale of food and beverages to carry-out, drive-through, and delivery in order to abate the hazard posed by COVID-19. (Id. ¶ 43.)

On March 27, 2020, the Governor issued a third Executive Order "to mitigate community spread of COVID-19 and to reduce the burden on the state's health care providers and facilities," stating that all "individuals currently in the State of North Carolina are ordered to stay at home" except to perform essential activities, including activities related to health and safety, to obtain necessary supplies and services, to receive goods and services provided by an essential business, and to travel to a place of residence. (Id. ¶¶ 45-47 (internal citations omitted).)

Plaintiff alleges that the Governor's orders "specifically prohibited Plaintiff's business from being open and specifically prohibited access to Plaintiff's business." (Id. ¶ 49.) Plaintiff alleges that it "suffered an actual loss of Business Income due to the suspension of operations," (id. ¶ 50), because "[t]he suspension of Plaintiff's operations was caused by direct

- 5 -

physical loss of or physical damage to property in the form of
both a loss of access to the insured properties for business
purposes" due to COVID-19 and the Governor's Orders, "or the
actual damage in the form of the likely physical presence of
COVID-19 on or within the properties, (id. ¶ 52 (internal
quotations omitted).) Moreover, Plaintiff alleges that the
COVID-19 pandemic and the Governor's orders "separately
implicated" the Policy's Civil Authority coverage "because
access to the scheduled premises was prohibited order of a civil
authority as the direct result of a 'RISK[] OF DIRECT PHYSICAL
LOSS' to property in the immediate area of the schedule premises
from the COVID-19 Pandemic." (Id. ¶ 53.)

Plaintiff filed a claim under the Policy, which Defendant
denied on March 30, 2020. (Doc. 19-2 at 2.) Defendant wrote a
letter to Plaintiff explaining that it had denied coverage
because "the coronavirus did not cause property damage at
[Plaintiff's] place of business or in the immediate area
. . . ." (Id.) Defendant's letter further stated that, "[e]ven
if the virus did cause damage, it is excluded from the policy"
due to the Policy's Virus Exclusion. (Id.)

C.    **Procedural History**

Plaintiff filed this action on June 11, 2020, alleging that
its restaurants suffered a business loss covered under

Plaintiff's policy when Plaintiff was "forced to significantly curtail its services due to the COVID-19 Pandemic . . . [and] the executive orders issued by the Governor of North Carolina . . . ." (Doc. 1 ¶ 1.) On November 6, 2020, Plaintiff filed an Amended Complaint on behalf of itself and putative class members who held policies with Defendant, contesting Defendant's refusal to pay for business losses incurred during the COVID-19 pandemic. (Am. Compl. (Doc. 19) ¶ 10.)

On December 4, 2020, Defendant filed its Rule 12(b)(6) Motion to Dismiss, (Doc. 25), for failure to state a claim, (Doc. 25), and accompanying corrected brief, (Mem. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Br.") (Doc. 37)). Plaintiff responded on January 18, 2021, (Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Resp.") (Doc. 31)), and Defendant replied on February 1, 2021, Doc. 38)).

Defendant also filed its Rule 12(b)(1) and (b)(2) Motion to Dismiss Plaintiff's Nationwide Class Action Claims on December 4, 2020, (Doc. 27), along with an accompanying brief, (Doc. 28). Plaintiff responded on January 18, 2021, (Doc. 32), and Defendant replied on February 1, 2021, (Doc. 36). On March 8, 2021, Defendant filed a Suggestion of Subsequently Decided Authority regarding its Motion to Dismiss Plaintiff's Nationwide Class Action Claims. (Doc. 41.) On March 18, 2021, Plaintiff

filed a Suggestion of Subsequently Decided Authority regarding Defendant's motion. (Doc. 42.) On March 19, 2021, Defendant filed a second Suggestion of Subsequently Decided Authority. (Doc. 43.)

## II. Motion to Dismiss for Failure to State a Claim

Defendant first moves to dismiss all counts of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 25.)

### A. Legal Standard

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556–57).

When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. Iqbal, 556 U.S. at 678. Further, this court liberally construes "the complaint, including all reasonable inferences therefrom, . . . in the plaintiff's favor." Est. of Williams-Moore v. All. One

- 8 -

<u>Receivables Mgmt., Inc.</u>, 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted). This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678.

**B.   Analysis**

Defendant argues that Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted for four reasons: (1) the Policy's Virus Exclusion bars Plaintiff's claim; (2) Plaintiff did not experience a direct physical loss or direct physical damage to its property; (3) the Policy's limited coverage for viruses does not apply; and (4) the Policy's Civil Authority provision does not apply. (Def.'s Br. (Doc. 37) at 13-28.)

**1.   Contract Interpretation Under North Carolina Law**

"[North Carolina law] mandates that the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract." <u>Fortune Ins. Co. v. Owens</u>, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000). The parties agree that North Carolina law governs in this diversity suit. (<u>See</u> Def.'s Br. (Doc. 37) at 13 n.2; Pl.'s Resp. (Doc. 31) at 8.)

- 9 -

"Pursuant to North Carolina law, the interpretation of an insurance policy is a question of law . . . ." State Auto Prop. & Cas. Ins. Co. v. Travelers Indem. Co. of Am., 343 F.3d 249, 254 (4th Cir. 2003). An insurance policy is a contract, and consistent with contract law, "the goal of construction is to arrive at the intent of the parties when the policy was issued." Woods v. Nationwide Mut. Ins. Co., 295 N.C. 500, 505, 246 S.E.2d 773, 777 (1978).

If there is an ambiguity as to the meaning of a policy term, that ambiguity must be resolved in favor of the policyholder. State Auto Prop. & Cas. Ins. Co., 343 F.3d at 254; see also Woods, 295 N.C. at 506, 246 S.E.2d at 777. An ambiguity exists where, in the opinion of the court, "the language of the policy is fairly and reasonably susceptible to either of the constructions for which the parties contend." Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co., 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970). An ambiguity is not established simply because the policyholder and company disagree on the meaning of a term. Id. Where "the terms of the policy are plain, unambiguous, and susceptible of only one reasonable interpretation, a court will enforce the contract according to its terms." ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 472 F.3d 99, 116 (4th Cir. 2006). The court "may

not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein." <u>Woods</u>, 295 N.C. at 506, 246 S.E.2d at 777.

## 2. <u>The Virus Exclusion Bars Plaintiff's Claim</u>

Defendant argues that the Virus Exclusion bars Plaintiff's claim because Plaintiff's losses were caused by COVID-19, a virus. (Def.'s Br. (Doc. 37) at 13-18.) This court agrees.

Federal district courts around the country have held that virus exclusions in other policies written by Defendant bar insurance claims for business losses related to the COVID-19 pandemic. <u>See, e.g.</u>, <u>Q Clothier New Orleans LLC v. Twin City Fire Ins. Co.</u>, Civil Action No. 20-1470, 2021 WL 1600247, at *7 (E.D. La. Apr. 23, 2021) ("[T]his Court finds that the Virus Exclusion bars [the plaintiff's] claims."), <u>appeal docketed</u>, No. 21-30278 (5th Cir. May 25, 2021); <u>Eye Care Center of New Jersey v. Twin City Fire Ins. Co.</u>, Civ. No. 20-05743, 2021 WL 457890, at *2-3 (D.N.J. Feb. 8, 2021) (holding coverage barred under a virus exclusion that excluded loss or damage "caused directly or indirectly by" the "[p]resence, growth, proliferation, spread or any activity of . . . virus"); <u>Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.</u>, Civil Action No. 20-2401, 2021 WL 131556, at *10 (E.D. Pa. Jan. 14, 2021) (same).

- 11 -

Moreover, other courts, including two in this district, have held that nearly identical virus exclusions in other insurance companies' policies bar claims related to the COVID-19 pandemic. See, e.g., Julie's Inc. v. Hanover Ins. Grp., Inc., No. 1:20CV853, 2021 WL 2312532, at *4 (M.D.N.C. June 7, 2021) (holding policy's virus exclusion clause barred plaintiff's claims); Natty Greene's Brewing Co., LLC v. Travelers Cas. Ins. Co. of Am., 503 F. Supp. 3d 359, 364 (M.D.N.C. 2020); Del. Valley Plumbing Supply, Inc. v. Merchants Mut. Ins. Co., No. 1:12-cv-08257, 2021 WL 567994, at *4 (D.N.J. Feb. 16, 2021); Humans & Res., LLC v. Firstline Nat'l Ins. Co., 512 F. Supp. 3d 588, 600 (E.D. Pa. 2021) (holding coverage barred by a virus exclusion that excluded coverage for loss or damage caused by "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease"); Boulevard Carroll Ent. Grp., Inc. v. Fireman's Fund Ins. Co., Civil Action No. 20-11771, 2020 WL 7338081, at *2 (D.N.J. Dec. 14, 2020) (barring coverage because "the Policy clearly excludes coverage for damage, loss or expense arising from a virus. Because the Stay-at-Home Orders were issued to mitigate the spread of the highly contagious novel coronavirus, Plaintiff's losses are tied inextricably to that virus and are not covered by the Policy"); Kessler Dental Assocs., P.C. v. Dentists Ins.

<u>Co.</u>, 505 F. Supp. 3d 474, 478-79 (E.D. Pa. 2020) (finding virus exclusion barred coverage for loss or damage caused by "any 'virus, bacteria or other microorganism that cause or could cause physical illness, disease or disability'"); <u>Brian Handel D.M.D., P.C. v. Allstate Ins. Co.</u>, 499 F. Supp. 3d 95, 100 (E.D. Pa. 2020) (holding the virus exclusion excluded coverage for loss or damage caused by "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease"); <u>Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Conn.</u>, 492 F. Supp. 3d 1051, 1054 (C.D. Cal. 2020) (holding the virus exclusion barred coverage for loss or damage caused by "any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease"), <u>appeal docketed</u>, No. 20-56031 (9th Cir. Oct. 6, 2020); <u>Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.</u>, 483 F. Supp. 3d 1189, 1191 (M.D. Fla. 2020) (finding virus exclusion barred coverage for loss or damage caused by "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease"); <u>Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.</u>, 488 F. Supp. 3d 904, 907 (N.D. Cal. 2020) (barring coverage based on virus exclusion that stated "[w]e will not pay for loss or damage caused directly or indirectly by [virus].

Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss"); Diesel Barbershop, LLC v. State Farm Lloyds, 479 F. Supp. 3d 353, 361 (W.D. Tex. 2020) (barring coverage based on virus exclusion that stated insurer "does not insure for a loss regardless of 'whether other causes acted concurrently or in any sequence within the excluded event to produce the loss'" and finding that "it was the presence of COVID-19 in . . . Texas that was the primary root cause of Plaintiffs' businesses temporarily closing"); Border Chicken AZ LLC v. Nationwide Mut. Ins. Co., 501 F. Supp. 3d 699, 706 (D. Ariz. 2020) (holding that "the language in the Virus Exclusion clearly and unambiguously bars coverage for losses directly and indirectly caused by a virus").

Plaintiff argues that this court should adopt the holding of the federal district court in Urogynecology Specialist of Florida LLC v. Sentinel Ins. Co., Ltd, 489 F. Supp. 3d 1297 (M.D. Fla. 2020), (Pl.'s Resp. (Doc. 31) at 13-14), in which the court held that an insurance contract covered losses due to the COVID-19 pandemic, Urogynecology, 489 F. Supp. 3d at 1302-03.

This court finds, however, that Urogynecology is distinguishable from the instant matter. There, the court declined to "make a decision on the merits of the plain language

- 14 -

of the Policy to determine whether Plaintiff's losses were covered" because the district court was not presented with all of the relevant documents necessary to interpret the language of the complete policy. Id. at 1302. In the instant matter, this court has before it all of the relevant policy documents, including the Virus Exclusion language, and the language contained in these documents is unambiguous. Moreover, as one district court has noted, the court in Urogynecology "did not cite anything . . . that would support a conclusion that a business shutdown due to a pandemic falls outside the scope of the virus exclusion." Founder Inst. Inc. v. Hartford Fire Ins. Co., 497 F. Supp. 3d 678, 679 (N.D. Cal. 2020), appeal docketed, No. 21-15404 (9th Cir. Mar. 8, 2021). Accordingly, this court does not find the court's holding in Urogynecology persuasive.

Instead, consistent with the overwhelming majority of courts' rulings, this court finds that the Virus Exclusion clause excludes coverage for loss caused by the COVID-19 pandemic. The language in the Virus Exclusion is not ambiguous: it expressly excludes coverage or damage caused directly or indirectly by, or resulting from, any virus. (Policy (Doc. 19-1) at 137.) Plaintiff does not contest that COVID-19 is a virus and that it directly or indirectly caused Plaintiff's losses, (see Am. Compl. (Doc. 19) ¶¶ 12, 36-38, 60; Pl.'s Resp. (Doc. 31) at

- 15 -

12-13), but rather, argues that the clause does not apply to a pandemic, (Pl.'s Resp. (Doc. 31) at 12-15).

Moreover, this court finds Plaintiff's attempt to distinguish a "virus" from a "pandemic" unpersuasive. As one district court has held, "the word 'pandemic' describes a disease's geographic prevalence, but it does not replace disease as the harm-causing agent." Boxed Foods Co. v. Cal. Cap. Ins. Co., 497 F. Supp. 3d 516, 523 (N.D. Cal. 2020). See also Julie's Inc., 2021 WL 2312532, at *4 (holding that a virus and pandemic were indistinguishable for the purposes of interpreting virus exclusion clause); W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos., 498 F. Supp. 3d 1233, 1242 n.6 (C.D. Cal. 2020) (holding that plaintiff's attempt to distinguish pandemic and virus "defies the plain and unambiguous text of the Policy and is akin to arguing that a coverage exclusion for damage caused by fire does not apply to damage caused by a very large fire") (internal quotations omitted).

The Virus Exclusion explicitly excludes viruses from coverage, with no mention of their geographic prevalence. To rewrite the Virus Exclusion to allow coverage for a pandemic would expand the scope of risk undertaken by Defendant and impermissibly create an ambiguity where none currently exists. See, e.g., New NGC, Inc. v. ACE Am. Ins. Co., 105 F. Supp. 3d

- 16 -

552, 566 (W.D.N.C. 2015) ("The Court is persuaded that construing this exclusion in a manner to afford coverage would effectively rewrite the contract . . . .") (internal citation omitted). Thus, because the terms of the Policy are "plain, unambiguous, and susceptible of only one reasonable interpretation," this court must "enforce the contract according to its terms," ABT Bldg. Prods. Corp., 472 F.3d at 115-16, and find that Plaintiff's coverage claims should be rejected as a matter of law.

### 3. Plaintiff's Regulatory Estoppel Arguments are not Persuasive

Plaintiff argues that Defendant's motion should be denied based on the doctrine of regulatory estoppel. (Pl.'s Resp. (Doc. 31) at 15-17.) Plaintiff argues that "there was an effort by the insurance industry . . . to add purported virus exclusions to policies while not lowering rates," and that insurance industry organizations made misleading statements that virus exclusions were "only meant to 'clarify' that coverage for 'disease-causing agents' has never been in effect and was never intended to be included in the property policies." (Id. at 16.) Plaintiff argues that Defendant's conduct "may be even more misleading because Defendant added in the purported Virus Exclusion . . . an endorsement to the policy entitled 'Limited Fungi, Bacteria or Virus Coverage,' thereby making it appear to afford coverage

- 17 -

and not be an exclusion." (Id.) Plaintiff asserts discovery is necessary to understand "what representations were made to insurance regulators in North Carolina regarding the addition of the 'Limited Fungi, Bacteria or Virus Coverage' which Defendant now asserts bars all coverage from viruses." (Id.)

This court finds this argument unpersuasive, as North Carolina has not adopted the specific doctrine of regulatory estoppel for which Plaintiff advocates. Plaintiff cites only cases interpreting Pennsylvania law. (Id. at 15 (citing Sunbeam Corp. v. Liberty Mut. Ins. Co., 781 A.2d 1189, 1192-93 (Pa. 2001); Hussey Copper, Ltd. v. Royal Ins. Co. of Am., 567 F. Supp. 2d 774, 787 (W.D. Pa. 2008)).)

Instead, the North Carolina Supreme Court has held that insured parties may not use the doctrine of estoppel to bring within the coverage of a policy risks not covered by its terms or risks expressly excluded from its terms. Hunter v. Jefferson Standard Life Ins. Co., 241 N.C. 593, 595, 86 S.E.2d 78, 80 (1995); Pearce v. Am. Def. Life Ins. Co., 316 N.C. 461, 466, 343 S.E.2d 174, 177 (1986). Federal courts interpreting North Carolina law have declined to consider regulatory estoppel arguments. See, e.g., Julie's Inc., 2021 WL 2312532, at *5 (holding that North Carolina has not adopted this doctrine of regulatory estoppel); 7th Inning Stretch LLC v. Arch Ins. Co.,

- 18 -

Civil Action No. 20-8161, 2021 WL 800595, at *3 n.6 (D.N.J. Jan. 19, 2021) ("Regulatory estoppel . . . has not been adopted [in] North Carolina . . . Therefore, Plaintiffs may not rely on regulatory estoppel to challenge the validity of the Policies' virus exclusion provision."); <u>Wysong and Miles Co. v. Emps. Of Wausau</u>, 4 F. Supp. 2d 421, 432 (M.D.N.C. 1998) ("The rule preventing the use of estoppel to bring within the coverage of a policy risks not covered by its terms or risks expressly excluded from its terms applies to this case as well.").

Applying the North Carolina Supreme Court's precedent, because the Policy unambiguously excludes claims due to virus, <u>see</u> discussion <u>supra</u> Part II.B.2, this court will not use estoppel as a grounds upon which to grant relief to Plaintiff.

### 4. **This Court Need Not Examine Whether the Policy's Physical Loss or Damage and Civil Authority Provisions Are Satisfied**

The parties dispute the meaning of the phrase "direct physical loss of or physical damage to Covered Property," as used in the Policy, (Policy (Doc. 19-1 at 35), and whether it applies to Plaintiff's claims, (Def.'s Br. (Doc. 37) at 19; Pl.'s Resp. (Doc. 31) at 11). Moreover, the parties dispute whether Plaintiff is entitled to coverage under the Policy's Civil Authority provision. (Def.'s Br. (Doc. 37) at 25; Pl.'s Resp. (Doc. 31) at 21-23.) This provision states that "insurance

- 19 -

is extended to apply to the actual loss of Business Income"
sustained during a 30-day period "when access to [Plaintiff's]
'scheduled premises' is specifically prohibited by order of a
civil authority as the direct result of a Covered Cause of Loss
to property in the immediate area of [Plaintiff's] 'scheduled
premises'." (Policy (Doc. 19-1) at 45.)

This court finds that a covered cause of loss is a
necessary element of both provisions. (See id. at 35, 45.)
Because this court has found that the Policy's Virus Exclusion
provision excludes COVID-19 as a covered cause of loss, see
discussion supra Part II.B.2, this necessary element is not
satisfied. Accordingly, this court need not consider whether
COVID-19 constitutes "direct physical loss . . . or physical
damage" or whether Plaintiff is entitled to coverage under the
Civil Authority provisions. (Policy (Doc. 19-1) at 35.) See also
Julie's Inc., 2021 WL 2312532, at *5 ("[H]aving found the Virus
Exclusion applicable here, it is not necessary to examine the
issue of whether COVID-19 constitutes 'direct physical loss or
damage' under the Business Income [or] Civil Authority . . .
provision[] of the Policy."); Natty Greene's Brewing Co., 503
F. Supp. 3d at 364 n.4 ("The court need not resolve questions
about coverage provisions since the virus exclusion applies
. . . .").

### 5. The Policy's Limited Coverage is Inapplicable

Through its Virus Exclusion, the Policy generally excludes all losses caused by a virus. (Policy (Doc. 19-1) at 137.) The Policy does, however, have an exception for "Limited Coverage for 'Fungi', Wet Rot, Dry Rot, Bacteria and Virus" ("Limited Coverage"). (Id. at 138.) The parties dispute whether the Limited Coverage applies to Plaintiff. (Def.'s Br. (Doc. 37) at 22-24; Pl.'s Resp. (Doc. 31) at 18-19.)

The Limited Coverage section is subdivided into six subsections labeled (a) through (f). (Policy (Doc. 19-1 at 138-39.) Subsections (a) and (b) indicate that this limited coverage applies only if the policyholder demonstrates both that (1) the virus is the result of equipment breakdown or a "specified cause of loss" other than lightning or fire; and (2) the virus resulted from "loss or damage." (Id. at 138.) The Policy defines loss or damage as "[d]irect physical loss or direct physical damage to Covered Property caused by . . . virus, including the cost of removal" of the virus, the "cost to tear out and replace any part of the building or other property as needed to gain access" to the virus, and the "cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed . . . ." (Id.) Moreover, Subsection (f) states:

The following applies only if a Time Element Coverage
applies to the "scheduled premises" and only if the
suspension of "operations" satisfies all the terms and
conditions of the applicable Time Element Coverage.

(1)   If the loss which resulted in "fungi", wet or dry
      rot, bacteria or virus does not in itself
      necessitate a suspension of "operations", but
      such suspension is necessary due to loss or
      damage to property caused by "fungi", wet or dry
      rot, bacteria or virus, then our payment under
      the Time Element Coverage is limited to the
      amount of loss and expense sustained in a period
      of not more than 30 days unless another number of
      days is indicated in the Declarations.

(Id. at 138-39.)

Plaintiff argues that subsection (f) provides freestanding
time element coverage for viruses limited to 30 days, separate
and distinct from the limited coverage described in Subsections
(a) and (b). (Pl.'s Resp. (Doc. 31) at 18-19.) This court
disagrees, finding instead that Subsection (f) addresses the
length of time Business Income and Extra Expense losses would be
covered where the underlying loss does not cause operations to
be suspended, but the resulting virus does.

Under North Carolina law, "[t]he various terms of [a]
policy are to be harmoniously construed, and if possible, every
word and every provision is to be given effect." Woods, 295 N.C.
at 506, 246 S.E.2d at 777. "[I]f the meaning of the policy is
clear and only one reasonable interpretation exists, the courts
must enforce the contract as written[.]" Id. A reasonable

- 22 -

reading of the Policy clearly demonstrates that the subsections of the Limited Coverage provide indivisible coverage, rather than standalone coverage under each subsection.

First, the Policy's language and structure clearly demonstrate that Subsection (f) only applies if the other conditions of the Limited Coverage exist. The Declarations referenced in Subsection (f) state that the Limited Coverage "includ[es] business income and extra expense coverage for: 30 DAYS." (Policy (Doc. 19-1) at 17.) Consistent with a reasonable reading of the Limited Coverage section to provide business expenses only where all conditions of the Limited Coverage are satisfied, there is no standalone business income virus or extra expense coverage indicated on the Declarations page.

Second, the use of common language throughout the Limited Coverage clearly demonstrates that the subsections are to be read together. For example, Subsection (b) states that "[a]s used in this Limited Coverage, the term loss or damage means . . . ." (Id. at 138.) This language unambiguously demonstrates that the term "loss or damage" applies to the entire Limited Coverage section of the Policy, not just Subsection (b). Similarly, Subsections (a) and (f) both require that the virus be the result of an underlying covered cause of loss. (Compare id. ("The coverage described . . . applies when the . . . virus

- 23 -

is the result of one or more of the following causes . . . ."),
with id. at 138-39 ("If the loss which resulted in . . . virus
does not in itself necessitate a suspension of "operations", but
such suspension is necessary due to loss or damage to property
caused by . . . virus . . . .").)

Third, the only way to read the Virus Exclusion and the
Limited Coverage in harmony is to read Subsection (f) as
applying only where the requirements of Subsections (a) and (b)
are met. Plaintiff has not alleged that the virus was caused by
the particular specified causes of loss indicated in the Policy
or from an equipment breakdown. (Pl.'s Resp. (Doc. 31).) If this
court were to adopt Plaintiff's interpretation and regard
Subsection (f) as providing standalone coverage, this court
would not give full effect to the Virus Exclusion, which
expressly states that viruses are not a covered cause of loss.

This court finds Plaintiff's citation to Independence
Barbershop LLC v. Twin City Fire Ins. Co., No. A-20-CV-00555-
JRN, 2020 WL 6572428 (W.D. Tex. Nov. 4, 2020), unpersuasive.
(Pl.'s Resp. (Doc. 31) at 18.) In Independence Barbershop, the
district court interpreted a similar Limited Coverage provision
in isolation without considering how it operated with the policy
as a whole, as required under North Carolina law. 2020 WL
6572428, at *4. Instead, this court finds persuasive the

- 24 -

interpretation in <u>Colgan v. Sentinel Ins. Co.</u>, No. 20-cv-04780-HSG, 2021 WL 472964, at *5 (N.D. Cal. Jan. 26, 2021), <u>appeal docketed</u>, No. 21-15332 (9th Cir. Feb. 25, 2021), in which the district court "read[] the Limited Virus provision in context, with reference to its subparts, and as an exception to the Virus Exclusion." In that case, the court found that the "Time Element Coverage" did not provide standalone coverage, "but instead, [was] triggered when the other requirements of the Limited Virus provision [were] met." <u>Id.</u>

For these reasons, this court finds that the Limited Coverage is inapplicable to Plaintiff as a matter of law. In the absence of a claim upon which relief could be granted, this court will grant Defendant's motion and dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## III. <u>Motion to Dismiss Plaintiff's Nationwide Class Action Claims</u>

Defendant also moves to dismiss all counts of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and Local Rule 7.2. (Doc. 27.)

This court recognizes that neither party has brought a motion to certify class. Fed. R. Civ. P. 23(c)(1) provides that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ.

P. 23(c)(1). Although "analysis of a prospective class's
compliance with Rule 23 is not appropriately considered on a
motion to dismiss, but should instead be addressed in a motion
brought pursuant to Rule 23(c)(1)(A)," <u>Lesser v. Balt. City Bd.</u>
<u>of Sch. Comm'rs</u>, Civil No. JKB-17-046, 2017 WL2733938, at *2 (D.
Md. June 26, 2017), "[t]o require notice to be sent to all
potential plaintiffs in a class action when the underlying claim
is without merit is to promote inefficiency for its own sake."
<u>Marx v. Centran Corp.</u>, 747 F.2d 1536, 1552 (6th Cir. 1984). Even
if neither party moves for a Rule 23(c)(1) decision, "the court
has an independent obligation to decide whether an action
brought on a class basis is to be so maintained." 7AA Charles
Alan Wright & Arthur R. Miller, Federal Practice and Procedure
§ 1785 (3d ed. 2018). Accordingly, where reasonable under the
circumstances, courts may rule on 12(b)(6) motions prior to
class certification. <u>See, e.g.</u>, <u>Twombly</u>, 550 U.S. at 550
(affirming dismissal of antitrust claims prior to ruling on
class certification); <u>McReynolds v. Merrill Lynch & Co.</u>, 694
F.3d 873, 879 n.4 (7th Cir. 2012) ("[T]here is no fixed
requirement that the court must <u>always</u> defer a decision on a
Rule 12(b)(6) motion until after the court addresses class
certification."). Indeed, this approach appears to have been
contemplated by the drafters of the Federal Rules of Civil

- 26 -

Procedure. See Fed. R. Civ. P. 23(c)(1) advisory committee's notes to 2003 amendment ("The party opposing the class may prefer to win dismissal or summary judgment as to the individual plaintiffs without certification and without binding the class that might have been certified.").

Because this court will dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6), see discussion supra Part II, Defendant's Motion to Dismiss Plaintiff's Nationwide Class Action Complaint, (Doc. 27), will be denied as moot or not ripe.

## IV. CONCLUSION

For the reasons set forth herein, this court finds that Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's Amended Class Action Complaint, (Doc. 25), for failure to state a claim should be granted; and Defendant's Rule 12(b)(1) and (b)(2) Motion to Dismiss Plaintiff's Nationwide Class Action Claims, (Doc. 27), will be denied as moot.

**IT IS THEREFORE ORDERED** that Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's Amended Class Action Complaint, (Doc. 25), for failure to state a claim is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Rule 12(b)(1) and (b)(2) Motion to Dismiss Plaintiff's Nationwide Class Action Claims, (Doc. 27), is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED WITH PREJUDICE.**

A judgment reflecting this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 16th day of August, 2021.

_____
United States District Judge